IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| RAFAEL LESEAN RASHEED LOPEZ,<br>    Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil No. 3:16cv24 (JAG) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,<br>    Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

On March 14, 2012, Rafael Lesean Rasheed Lopez ("Plaintiff") applied for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from right leg and knee problems, chronic asthma and high blood pressure, with an alleged onset date of October 12, 2009. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in evaluating the medical opinion evidence and Plaintiff's credibility, and in determining Plaintiff's Residual Functional Capacity ("RFC"). (Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 9) at 7-14.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties'

cross motions for summary judgment, rendering the matter now ripe for review. [1] For the reasons

that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 9)

be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 10) be DENIED and

that the final decision of the Commissioner be VACATED and REMANDED.

## I.     PROCEDURAL HISTORY

On March 14, 2012, Plaintiff filed an application for SSI, with an alleged onset date of

March 14, 2012.[2] (R. at 81-89.) The SSA denied these claims initially on July 23, 2012, and

again upon reconsideration on January 4, 2013. (R. at 92-96, 104-10.) At Plaintiff's written

request, the ALJ held hearings on April 10, 2014, and June 24, 2014. (R. at 31-55, 56-70.) On

July 28, 2014, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that

Plaintiff did not qualify as disabled under the Act, because Plaintiff had not suffered from a

disability within the meaning of the Act since March 14, 2012, the date that he filed the

application. (R. at 17-24.) On November 13, 2015, the Appeals Council denied Plaintiff's

request for review, rendering the ALJ's decision as the final decision of the Commissioner

subject to review by this Court. (R. at 1-4.)

## II.     STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

---

[1]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

[2]     Plaintiff listed October 12, 2009, as the alleged onset date on his SSI application. Because Title XVI claims have no retroactivity, the application filing date or protective filing date provide the earliest possible alleged onset date. Therefore, the Court will treat March 14, 2012 as the alleged onset date. 20 C.F.R. § 416.325.

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine

whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite his physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform his past work given his RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III.    THE ALJ'S DECISION

On April 10, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) testified. (R. at 31-55.) On June 24, 2014, the ALJ held a second hearing, during which a vocational expert ("VE") testified. (R. at 31-55, 56-70.) On July 28, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 17-24.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 17-19.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 14, 2012, the alleged onset date. (R. at 19.) At step two, the ALJ determined that the Plaintiff had the severe impairments of degenerative joint disease of the right knee, degenerative disc disease of the lumbar spine and obesity. (R. at 19.) At step three, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii); (R. at 19.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work. (R. at 20.) The ALJ determined that Plaintiff could lift, carry, push and pull twenty pounds

4

occasionally and ten pounds frequently. (R. at 20.) Plaintiff could stand and walk for four hours

and sit for six hours in an eight-hour workday. (R. at 20.) Plaintiff could occasionally operate

foot controls with the right lower extremity. (R. at 20.) Plaintiff could frequently climb ramps

and stairs, and occasionally climb ladders, ropes and scaffolds. (R. at 20.) Additionally,

Plaintiff could frequently balance and could occasionally stoop, kneel, crouch and crawl. (R. at

20.) Finally, the ALJ found that Plaintiff could perform jobs that permit one to change position

between sitting and standing at intervals of approximately twenty to thirty minutes while

remaining on task. (R. at 20.) At step four, the ALJ did not consider whether Plaintiff had the

RFC to perform past relevant work, because Plaintiff did not have past relevant work. (R. at

23.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant

numbers in the national economy, considering his age, education, work experience and RFC. (R.

at 23.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 24.)

## IV.   ANALYSIS

Plaintiff, thirty-one years old at the time of this Report and Recommendation, previously

worked as a cook, a dishwasher, a stocker and a cashier. (R. at 88.) On March 14, 2012,

Plaintiff applied for SSI, alleging disability from right leg and knee problems, chronic asthma

and high blood pressure. (R. at 195-204, 218.) Plaintiff raises three arguments on this appeal:

(1) that the ALJ erred in not affording greater weight to the opinions of Dr. William Nordt,

Plaintiff's treating physician; (2) that the ALJ erred in evaluating Plaintiff's credibility; and (3)

that the ALJ failed to cite sufficient evidence to support his RFC determination. (Pl.'s Mem. at

7-14.) Defendant responds that substantial evidence in the record supports the ALJ's RFC

assessment. (Mem. in Supp. of Def.'s Mot. For Summ. J. ("Def.'s Mem.") (ECF No. 10) at 18-

19.) For the reasons set forth below, the ALJ did not err in his assignment of weight or

assessment of credibility, but did err by failing to cite sufficient evidence in support of his RFC determination.

### A. The ALJ did not err in assigning little weight to the opinion of Plaintiff's treating physician.

Plaintiff argues that the ALJ erred by failing to properly evaluate the medical opinion evidence and, therefore, improperly determined Plaintiff's RFC. (Pl.'s Mem. at 7-11.) Specifically, Plaintiff alleges that the ALJ should have given controlling weight to the opinion of Dr. Nordt, Plaintiff's treating physician, because the record does not contradict Dr. Nordt's opinion. (Pl.'s Mem. at 8.)   Defendant responds that Dr. Nordt's opinion conflicts with the record, supporting the ALJ's decision to give little weight to Dr. Nordt's opinion. (Def.'s Mem. at 19-21.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's provided medical records and any medical evidence resulting from consultative examinations or ordered medical expert evaluations. 20 C.F.R. §§ 404.1512(a)-(e), 404.1527, 416.912(a)-(e), 416.927.  When the record contains a number of different medical opinions, including those from Plaintiff's treating sources, consultative examiners or other sources that support each other, then the ALJ makes a determination based on that evidence. 20 C.F.R. §§ 404.1520b(a), 416.920b(a).  If, however, the medical opinions conflict internally with each other or other evidence, then the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved.  20 C.F.R. §§ 404.1527(c)(2)-(6), (e), 416.927(c)(2)-(6), (e).

Under the applicable regulations and case law, the ALJ must give a treating source's opinion controlling weight if it enjoys support from medically acceptable clinical and laboratory diagnostic techniques and does not conflict with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on the issue of whether the claimant has a disability precluding him from employment (an issue reserved for the Commissioner), or when the treating source's opinion conflicts with other evidence or when the other evidence does not support it. 20 C.F.R. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up specious inconsistencies." *Dunn*, 2015 WL 3451568, at *8 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should remain untouched unless the ALJ failed to give a sufficient reason for the weight afforded. 20 C.F.R. § 404.1527(d).

The ALJ must consider the following factors when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine the ultimate question of a claimant's disability as defined under the Act. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

7

Here, Dr. Nordt opined that Plaintiff could not engage in full-time competitive work for at least twelve months. (R. at 561, 572, 581.) He opined that Plaintiff could sit for four hours, stand or walk for one hour and occasionally lift and carry five pounds. (R. at 581.) Additionally, Plaintiff would need to get up from a seated position every fifteen minutes. (R. at 581.) The ALJ gave little weight to the opinions of Dr. Nordt, because they conflicted with Plaintiff's medical records. (R. at 22.) Specifically, the ALJ noted that the medical treatment of Plaintiff's right knee consisted primarily of steroid injections and pain medications. (R. at 22.) Substantial evidence supports the ALJ's decision.

The ALJ properly discredited Dr. Nordt's opinion, because it conflicted with his own treatment records. On December 12, 2009, Dr. Nordt began treating Plaintiff after his initial injury. (R. at 487.) Although Plaintiff underwent subsequent surgeries, he had only one reported issue after the onset date. (R. at 509.) On March 9, 2012, Dr. Nordt detected an infection within the portal site of his right knee. (R. at 509.) However, during a follow-up visit on March 22, 2012, Dr. Nordt noted that Plaintiff's knee looked good with a minimal amount of drainage or effusion. (R. at 510.) Dr. Nordt noted the lack of warmth or erythema along with comfortable motion in the knee. (R. at 510.)

On March 28, 2012, Plaintiff returned to Dr. Nordt with good motion and comfort levels. (R. at 511.) Plaintiff had little swelling and no drainage. (R. at 511.) Dr. Nordt noted that Plaintiff was "doing well." (R. at 511.) During five subsequent follow-up visits, Dr. Nordt documented that Planitiff's right knee had improved. (R. at 512-14.) On June 12, 2012, Dr. Nordt noted that Plaintiff's motion had improved since the surgery despite the infection. (R. at 514.) Although Dr. Nordt noted that Plaintiff had significant chronic knee pain, he

8

recommended that Plaintiff utilize an exercise bike, wean himself off of prescription pain medication and proceed with over-the-counter pain medication as necessary. (R. at 513-14.)

These internal conflicts support the ALJ's decision not to give Dr. Nordt's opinion controlling weight. Furthermore, these treatment notes provide substantial evidence for the ALJ's decision to give Dr. Nordt's ultimate opinion little weight. Therefore, the ALJ did not err in assigning little weight to Dr. Nordt's ultimate opinion.

**B. The ALJ did not err in evaluating Plaintiff's credibility.**

Plaintiff next assigns error to the ALJ's evaluation of his credibility. (Pl.'s Mem. at 11-14.) Specifically, Plaintiff argues that the ALJ erred by failing to consider his full treatment history and past use of a cane. (Pl.'s Mem. at 13-14.) Defendant responds that the ALJ correctly evaluated Plaintiff's credibility based on the record following his final surgeries. (Def.'s Mem. at 23-24.)

In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d 585, 594 (4th Cir. 1996); SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step requires the ALJ to determine whether an underlying medically determinable physical or mental impairment or impairments exist that reasonably could produce the individual's pain or other related symptoms. *Id.*; SSR 96-7p at 5. The ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take

into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d 595-96; SSR 96-7p at 5-6, 11.[3]

This Court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, the case law firmly establishes that Plaintiff's subjective allegations of pain do not, alone, prove that Plaintiff qualifies as disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably cause the alleged symptoms. (R. at 21.) However, the ALJ concluded that Plaintiff's

---

[3]    On March 16, 2016, the Agency issued SSR 16-3p, which rescinded and superseded SSR 96-7p, eliminating the credibility finding at issue here. The ALJ issued his opinion on June 24, 2014, before SSR 16-3p took effect. The Agency does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the Agency the general power to make rules, but not granting the Agency retroactive rulemaking power).  Because the SSR does not have retroactive effect, the Court will review the ALJ's decision under SSR 96-7p.

statements regarding the intensity, persistence and limiting effects lacked credibility. (R. at 21.)
The ALJ found it significant that Plaintiff had not regularly taken his asthma and hypertension
medications as prescribed to him. (R. at 21.) The ALJ also noted that Plaintiff did not pursue
physical therapy despite claiming back pain. (R. at 21.) Furthermore, Plaintiff's daily activities
undermined his credibility as to the extent of his functional limitations. (R. at 22.) And, the
conservative nature of the treatment of Plaintiff's leg undermined his claims that his leg
prevented him from working. (R. at 22.) Substantial evidence supports the ALJ's credibility
assessment.

Plaintiff's medical records support the ALJ's credibility assessment. On April 12, 2012,
Dr. Nordt found Plaintiff doing well and noted that he could flex his injured leg to about ninety-
five degrees and extend fully. (R. at 512.) On May 31, 2012, Dr. Nordt recommended that
Plaintiff wean himself off of the pain medications. (R. at 513.) On June 6, 2012, Dr. Nordt
again found Plaintiff doing well with better motion. (R. at 514.) Dr. Nordt recommended that
Plaintiff exercise and take over-the-counter medicine. (R. at 514.) During the final documented
visit on August 17, 2012, Dr. Nordt again noted Plaintiff's improvement. (R. at 515.)

Plaintiff's own statements support the ALJ's decision. Plaintiff testified that his physical
therapist encouraged him to discontinue use of the cane. (R. at 45.) He also testified that he had
normal balance and could walk up a short amount of steps, but not a lot of steps. (R. at 46.)
Plaintiff also testified that he could shower and sweep the floors. (R. at 47, 53.) In his function
report, Plaintiff indicated that he could prepare his own meals, shave, care for his hair and feed
himself. (R. at 240-44.) He also regularly attended doctors' appointments and physical therapy.
(R. at 240-44.) Plaintiff also told Dr. Nordt that he does "fairly well" with his knee three days a
week. (R. at 576.)

11

Therefore, substantial evidence supports the ALJ's decision not to fully credit Plaintiff's subjective complaints.

### C. The ALJ erred by failing to cite specific medical facts supporting the RFC.

Plaintiff argues that the ALJ failed to cite any specific medical facts that would serve as a foundation for his RFC finding or contradict the opinions of Dr. Nordt. (Pl.'s Mem. at 9-10.) Defendant argues that substantial evidence supports the ALJ's findings. (Def.'s Mem. at 17.)

In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of the claimant's physical limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 416.945(b). Generally, the claimant bears responsibility for providing the evidence that the ALJ utilizes in making his RFC determination; however, before determining that a claimant is not disabled, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. 20 C.F.R. § 416.945(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments that are based on the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* 20 C.F.R. § 416.945(e).

Social Security Ruling 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing SSR 96-8p). The Ruling further explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (citing SSR 96-8p).

12

The Fourth Circuit rejected a *per se* rule requiring remand when the ALJ fails to perform a function-by-function analysis, but the ALJ's decision must still allow for a meaningful review. *Mascio*, 780 F.3d at 636. In light of *Mascio*, at least three district courts have found that in the absence of an explicit function-by-function analysis, the reviewing court must assess whether the ALJ's RFC analysis considered the relevant function, whether his decision provides a sufficient basis to review his conclusions, and ultimately, whether substantial evidence supports that decision. *Ashby v. Colvin*, 2015 WL 1481625, *3 (S.D.W. Va. March 31, 2015) (holding that ALJ did not conduct explicit function-by-function analysis of claimant's physical abilities, but sufficient evidence existed showing that ALJ analyzed the relevant function); *see also Scruggs v. Colvin*, 2015 WL 2250890, at *4 (W.D.N.C. May 13, 2015) (requiring remand because ALJ's decision did not address claimant's ability to complete tasks for a full workday); *Carver v. Colvin*, 2015 WL 4077466, at *10 (M.D.N.C. July 6, 2015) (recommending remand because ALJ neglected to assess claimant's ability to walk or stand for a full workday). If the ALJ does not perform a function-by-function analysis, he must adequately explain his reasoning for the RFC determination so that the Court may conduct a "meaningful review" of that finding, including a discussion of which evidence he found credible and why. *Radford v. Colvin*, 734 F.3d 288, 295-296 (4th Cir. 2013) (quoting *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012)). By providing a basis for his RFC determination, the ALJ builds "an accurate and logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 2016 WL 3349355, at *32-33 (4th Cir. June 16, 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). If the ALJ relies on objective evidence but does not specify the evidence that he relies upon, he has conducted an incomplete analysis and precluded a meaningful substantial evidence review. *Monroe*, 2016 WL 3349355, at *37.

In this case, the ALJ determined that Plaintiff could perform light work with limitations. (R. at 20.) The ALJ determined that Plaintiff could stand or walk for four hours and sit for six hours in an eight-hour work day, in addition to other limitations. (R. at 20.) The ALJ stated that he based the RFC determination on objective medical evidence, Plaintiff's admitted daily activities, the routine nature of Plaintiff's medical care and the opinion evidence of the state agency medical consultants. (R. at 20-23.) However, the ALJ did not cite sufficient factual evidence to support his RFC determination.

The objective medical evidence and routine treatment relied upon by the ALJ consists of Plaintiff's favorable response to steroid injections, full extension of his injured knee and flexion to 105 degrees despite a painful range of motion. (R. at 22.) However, he failed to address the strict weight-bearing restrictions put in place by Plaintiff's doctors on multiple occasions. (R. at 498, 500-502.) When Plaintiff told the doctors that he needed to walk to get a job, they reiterated the need for him to keep weight off of his leg. (R. at 502.) Although Plaintiff's doctors imposed these restrictions before the alleged onset date, the ALJ did not cite any evidence that contradicted Plaintiff's weight-bearing restrictions. He did not link any objective evidence to his determination that Plaintiff could stand or walk for four hours in an eight-hour day.

The ALJ also failed to sufficiently explain how he reconciled the discrepancies between Dr. Nordt's opinions and the state agency physicians' opinions. Dr. Nordt opined that Plaintiff could stand or walk for one hour in an eight-hour workday. (R. at 563.) Conversely, the state agency physicians concluded that Plaintiff could stand or walk for six hours a day. (R. at 76, 86-87.) The ALJ discounted the opinions of both. (R. at 22.) Instead, he determined that Plaintiff could stand for four hours. (R. at 20.) However, the ALJ gave no basis for this conclusion. He

did not cite to any specific medical evidence to support this conclusion.  Nothing in Plaintiff's testimony or function report supports a finding that he could stand for four hours.

As discussed in the previous sections, the evidence did support the ALJ's general decision to discredit Dr. Nordt's opinion and Plaintiff's allegations.  However, it does not support the specific decision that Plaintiff can stand for four hours.  The ALJ's lack of explanation results in a deficient "bridge from the evidence to his conclusion" regarding Plaintiff's ability to stand.  *Monroe*, 2016 WL 3349355, at \*32-33.  The ALJ did not redeem his lack of function-by-function analysis with a thorough discussion of the evidence.  Because the ALJ did not adequately explain his reasoning, this Court cannot conduct a meaningful review.  *Radford*, 734 F.3d at 295-96.  Therefore, the Court recommends remand.

## V.   CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motions for Summary Judgment and to Remand (ECF Nos. 7 and 8, respectively) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 10) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge John A. Gibney, Jr. and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure**

shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

 

 

_____ /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date:  October 13, 2016